**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TANISHIA T.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 20 C 6293** |
| **v.** | ) | |
| | ) | **Magistrate Judge Beth W. Jantz** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,**[2] | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

     This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Tanishia T.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 16, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 22, Def.'s Mot.] is granted.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I.    Procedural History

On October 4, 2018, Plaintiff filed a claim for DIB, alleging disability since September 22, 2018, due to pain in both of her knees.  [Dkt. 15-1, R. 256-57, 286.]  Plaintiff's claim was denied initially and again upon reconsideration.  [R. 147, 187.]  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 2, 2020. [R. 112-38.]  Plaintiff personally appeared and testified at the hearing and was represented by counsel.  [R. 114, 119-32.]  Vocational expert ("VE") Thomas Grzesik also testified.  [R. 132-37.]  On March 23, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act.  [R. 19-29.]  The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.  [R. 1-4.]

### II.    The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process.  [R. 19-29.]  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 22, 2018.  [R. 21.]  At step two, the ALJ concluded that Plaintiff had the following severe impairments: obesity and disorders of bilateral knees, including osteoarthritis, chondromalacia, and a meniscus tear, with a history of arthroscopic surgery.  [*Id.*]  The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing").  [R. 22-23.]  Before step four, the ALJ determined that Plaintiff retained the residual functional capacity

("RFC") to perform sedentary work[3] with the following additional limitations: she is able to stand or walk for no more than 10 minutes at a time; after sitting for 45 minutes, she must have the opportunity to stand at a workstation for 2 minutes; she is unable to climb ladders, ropes or scaffolds, crawl or kneel; she may occasionally climb ramps or stairs, balance, stoop, crouch or operate foot controls with the bilateral lower extremities; and she must avoid concentrated exposure to extreme cold. [R. 23-28.] At step four, the ALJ concluded that Plaintiff would not be able to perform her past relevant work. [R. 28.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 28-29.]

**DISCUSSION**

## I.    Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed

---

[3] Sedentary work involves lifting no more than 10 pounds at once and occasionally lifting or carrying "articles like docket files, ledgers, and small tools" as well as sitting for about 6 hours in an 8-hour workday and standing or walking for no more than 2 hours in an 8-hour workday. SSR 96-9P, 1996 WL 374185, at *3.

impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant

meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837.

Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's

analysis "must provide some glimpse into the reasoning behind [his] decision to deny benefits."

*Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673

(7th Cir. 2008).  The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail

and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695

(7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).  Thus, even if reasonable minds could differ

as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is

adequately explained and supported by substantial evidence.  *Elder*, 529 F.3d at 413.

## II.    Analysis

Plaintiff argues that the ALJ (1) failed to address the line of evidence concerning

Plaintiff's mental health difficulties, (2) erred in evaluating Plaintiff's subjective statements

about her symptoms, and (3) improperly rejected the opinion of Plaintiff's treating doctor.

[Dkt. 17, Pl.'s Mem. at 7-14; dkt. 24, Pl.'s Reply at 1-9.]  The Commissioner argues in

opposition that the ALJ did not err in not addressing the sparse mental health evidence or further

developing the record as to those conditions, the ALJ reasonably evaluated Plaintiff's subjective

symptoms in accordance with the applicable regulations, and the ALJ sufficiently supported his

assessment of the treating doctor's opinion.  [Dkt. 23, Def.'s Mem. at 3-14.]  For the reasons that

follow, the Court affirms the ALJ's decision.

### A.  Plaintiff's Mental Health Conditions

Plaintiff contends that the ALJ erred by ignoring "an entire line of evidence" regarding

her mental health conditions, citing in support her own statements on function reports and her

hearing testimony, treatment records where depression and bipolar disorder were mentioned, and

an emergency room record indicating that Plaintiff was once prescribed an anti-anxiety

medication. [Pl.'s Mem. at 7-8; *see also* Pl.'s Reply at 1-4.] This evidence, Plaintiff contends,

was at least sufficient such that the ALJ should have further developed the record by questioning

Plaintiff about her depression and/or obtaining her prior mental health treatment records from the

Bowen Center. [Pl.'s Mem. at 8.]

Although Plaintiff characterizes this unaddressed evidence as "an entire line,"

[Pl.'s Mem. at 7], a review of the records does not bear out this characterization by Plaintiff. The

treatment records from her orthopedist in 2017, which was prior to her alleged onset date,

indicated that depression was part of her "past medical history" by a simple "Y" (meaning "yes")

notation and reported that she took some medications, which Plaintiff now explains in her brief

to this Court are used to treat, as relevant here, bipolar disorder and depression. [R. 386, 390;

*see* Pl.'s Mem. at 7-8 & nn. 4-6.] In September 2018, a different provider identified the same

medications as in the 2017 records and listed depression, anxiety, bipolar disorder, and depressed

mood as "current problems" during visits, although the treatment focused on Plaintiff's knee

condition. [R. 424-47.] At the same time, however, during visits to that provider, Plaintiff

denied "anxiety and depression." [R. 427-47.] In March 2019, Plaintiff went to the emergency

room for pressure in her chest, reported a history of anxiety, and was prescribed a "limited

course" of anti-anxiety medication. [R. 559-60.]

Turning to Plaintiff's own reports, she stated in a first function report that she had "in the

past suffered from bipolar/depression" and that she thought her knee pain was causing a

"relapse" and in a second report that she did not handle stress well and was on depression, anti-

psychotic, and bipolar medications from 2012 to 2018. [R. 306, 326.] Additionally, at her

hearing, Plaintiff mentioned that she was "depressed," her "typical day" was "depressing," and

she was "getting kind of depressed sitting in the house." [R. 126, 130-31.] Given the sporadic nature of this evidence in the larger record—only carefully presented as an "entire line of evidence" by Plaintiff in hindsight in her briefing now, [Pl.'s Mem. at 7]—the Court finds it reasonable that the ALJ did not discuss these references to various mental health conditions. *Cf. Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *8 (N.D. Ill. Feb. 29, 2016); *Phillips v. Astrue*, 601 F. Supp. 2d 1020, 1032 (N.D. Ill. 2009).

Additionally, the records Plaintiff later submitted to the Appeals Council did not establish that she had ongoing treatment for any mental health condition during the relevant time frame, reflecting mental health treatment only in 2017 until April 2018 (before the onset date), and then further treatment resuming in April 2020 (after the ALJ's decision was issued). [R. 57-111.] Plaintiff's brief, vague references to being depressed at the hearing, [R. 126, 130-31], also did not necessarily mean that Plaintiff was suffering from a *clinical* condition as opposed to a depressed mood, resulting from her "sitting in [her] house," [R. 131]. *See, e.g., Thelmarae W. v. Saul*, 476 F. Supp. 3d 717, 730 (N.D. Ill. 2020) ("[D]epression, the mental illness, differs substantially from 'depression' the common mental state.") (internal quotation marks omitted). Based on all of the above, the Court questions whether, had the ALJ considered and discussed all this evidence, he would have found at step two that Plaintiff had any mental-health related "medically determinable impairment," which can only be established by "objective medical evidence from an acceptable medical source." 20 C.F.R. §404.1521; *see, e.g., Brihn v. Astrue*, 332 F. App'x 329, 332-33 (7th Cir. 2009) (ALJ did not err at step 2 in not finding mental impairment given only nonspecific diagnosis and plaintiff's own statements).

Moreover, Plaintiff has not identified any limitations that resulted from her depression or other mental condition that should have been included in the RFC, [*see* Pl.'s Mem. at 7-8], nor is

there evidence here that the allegedly ignored mental health condition(s) "limited her in any way." *Snedden*, 2016 WL 792301, at *8 (ALJ's omission of any discussion of several physical medical conditions not error because there was no basis to conclude that conditions would have altered the RFC); *see also Brihn*, 332 F. App'x at 332-33 (plaintiff's own statements about depression was insufficient to establish mental limitation); *Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *7 (N.D. Ill. Jan 17, 2012) (failure to discuss medical issues not error where plaintiff did not identify any evidence that those issues interfered with his ability to work). Thus, the ALJ's failure to discuss the mental health evidence Plaintiff identifies now does not warrant remand.

Furthermore, "a claimant represented by counsel is presumed to have made his best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). It was Plaintiff's obligation to prove that she was disabled, including by submitting "all evidence known to [her] that relates to whether or not [she is] disabled." 20 C.F.R. § 404.1512(a). Plaintiff's DIB application alleged disability based solely on her knee conditions (described by Plaintiff as "[p]ain in both knees"). [R. 256-57, 286.] Then, when Plaintiff was represented by counsel at the hearing, she failed to make any argument about mental limitations. [*See* R. 112-38.] Instead, counsel (1) affirmatively indicated that all evidence had been submitted (which did not include the 2017 mental health treatment records), (2) gave opening remarks limited to discussing Plaintiff's knee conditions, and (3) after being instructed to question Plaintiff about her "impairments and limitations," never asked Plaintiff about her mental health, although Plaintiff referenced being "depressed" when asked how her knee pain affected her ability to focus or concentrate. [*See* R. 116-17, 125-32.] If Plaintiff wanted to draw the ALJ's attention to the limited mental health information in the record or develop that evidence further, she had every

opportunity to do so, and Plaintiff cannot now fault the ALJ for not discussing this minimal evidence. *See Steffen v. Colvin*, No. 08 C 3935, 2013 WL 2285788, at *8 (N.D. Ill. May 23, 2013) (ALJ was "not obligated" to discuss impairments plaintiff did not present in application or at hearing).

The Court also finds unavailing Plaintiff's contrary assertion that the ALJ needed to develop the record further by questioning Plaintiff about her depression or obtaining the mental health records himself. [Pl.'s Mem. at 8.] Although the ALJ does have a duty to fully and fairly develop the record, this obligation is not endless, and the Court will ordinarily defer to the ALJ's reasoned judgment about how much evidence to gather. *Thomas v. Colvin*, 745 F.3d 802, 807-08 (7th Cir. 2014); *see also Migdalia M. v. Saul*, 414 F. Supp. 3d 1126, 1136 (N.D. Ill. 2019). Again, Plaintiff is assumed to have made her best case for benefits when represented as she was here, *Skinner*, 478 F.3d at 842, and Plaintiff has not explained why the ALJ should have stepped in after Plaintiff affirmatively represented that no more evidence was forthcoming, [R. 116].

In sum, the Court finds no error, let alone prejudicial error, in the ALJ not further developing the record as to Plaintiff's mental health condition(s) or discussing in his decision the limited evidence concerning those condition(s).

### B. Plaintiff's Subjective Symptom Statements

When evaluating a plaintiff's reports of her symptoms, in addition to the medical evidence, the ALJ may also consider a plaintiff's daily activities, intensity of pain and other symptoms, precipitating and aggravating factors, medications and their side effects, treatment received, and any other measures used to relieve symptoms. 20 C.F.R. § 404.1529(c)(1-3). The Court will overturn the ALJ's evaluation of a plaintiff's subjective statements only if it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). The ALJ must give

"specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *see Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (explaining that patently wrong "means that the decision lacks any explanation or support"). Indeed, "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *Pepper*, 712 F.3d at 362 (internal quotation omitted).

Plaintiff argues that the ALJ's assessment of her subjective symptoms "is both patently wrong and incomplete." [Pl.'s Mem. at 9-12; *see also* Pl.'s Reply at 5-7.] She raises an extensive list of purported errors that the ALJ made in discussing or omitting certain of Plaintiff's subjective reports. [Pl.'s Mem. at 9-12.] But these arguments do not convince the Court that the ALJ's analysis was so deficient as to be "patently wrong." *Summers*, 864 F.3d at 528. The Court summarizes the ALJ's analysis of Plaintiff's subjective symptoms before it addresses Plaintiff's arguments in the order that she makes them.

The ALJ concluded that Plaintiff's subjective reports were "not entirely consistent with the medical evidence and other evidence in the record." [R. 24.] The ALJ first briefly summarized Plaintiff's testimony: Plaintiff experienced "constant, throbbing pain in her knees throughout the day," her lower extremities swell a couple times a week or whenever she is physically active, and she will continue to have steroid injections until she is old enough for knee replacement surgery. [R. 23.] Next, the ALJ thoroughly discussed Plaintiff's treatment notes, including her treating doctor's opinion. [R. 24-26.] The ALJ then specifically found that the record did not support Plaintiff's allegations about needing to use a walker and to elevate her lower extremities to reduce swelling. [R. 26.] The record as a whole, the ALJ further explained, indicates that Plaintiff has full strength, sensation, and range of motion in her upper extremities and that her knee conditions improved following arthroscopic knee surgery, with "unremarkable"

10

physical examinations except some weakness of her lower extremities and tenderness of her knees. [*Id.*] The ALJ also found that Plaintiff was "recommended to lose weight and to resume normal activities after undergoing knee surgery," which was inconsistent with any finding that she was "unable to be physically active during the day." [*Id.*]

First, Plaintiff says that the ALJ inexplicably found her allegations not consistent with or supported by the record at the same time that he found persuasive the state agency physicians' opinions that Plaintiff could perform sedentary work. [Pl.'s Mem. at 9.] Because those doctors had found Plaintiff's statements "Fully Consistent" with the record, Plaintiff asserts that the ALJ could not credit those opinions while not fully crediting her allegations. [*Id.* (citing R. 142, 181).] But the ALJ evaluated more than the doctors had in terms of Plaintiff's subjective reports—not only the written record but also Plaintiff's hearing testimony, and the hearing testimony is what the ALJ primarily assessed in his decision. [*See* R. 23, 26.] Thus, there is no inconsistency in the ALJ both discounting some of Plaintiff's subjective reports and crediting those physicians' opinions about Plaintiff's functional limitations, which were based on their assessment of not just Plaintiff's allegations but also the medical evidence.

Second, Plaintiff challenges the ALJ's assessment of her use of a walker. [Pl.'s Mem. at 9-10.] The ALJ noted that Plaintiff used a walker at her hearing despite not ever having been prescribed one, and found that Plaintiff did not need an assistive device for support as physical examinations consistently showed that she could walk without one (although she had antalgic gait on occasion). [R. 26; *see* R. 428, 434, 451, 469, 553.] Plaintiff concedes that no walker was prescribed but insists that her belief that she needed one was reasonable "for her own sense of safety and comfort" and that using one does not undercut her pain allegations. [Pl.'s Mem. at 10.] The ALJ, however, did not draw the conclusion that Plaintiff's reports of

pain could not be believed because she used an unprescribed walker; he simply determined that her use of the walker was not supported by the medical evidence and thus a limitation on that basis in the RFC was not warranted.  [R. 26.]  Plaintiff essentially admits this point, as well.  [Pl.'s Mem. at 10 ("While use of a walker as a limitation may not be supported by Social Security's rules . . .").]

Third, the ALJ found Plaintiff's assertion that she needed to lie down a couple of times per week and elevate her legs because of swelling also unsupported by the record.  [R. 26.]  The ALJ pointed out that swelling was not documented in the treatment records except for one instance of mild edema in her knees and that no doctor had recommended elevation.  [*Id.*]  Plaintiff counters that the swelling was undocumented because her obesity made it difficult for her doctors to assess it.  [Pl.'s Mem. at 10 (citing R. 435).]  But the treatment note that Plaintiff references is an outlier; other doctors did indeed assess her swelling, [*see* R. 510, 538, 545, 570, 589, 594, 598, 605], and Plaintiff self-reported that she did not have swelling, [*see* R. 427, 433].  Additionally, Plaintiff again says that these are not reasons to discount her pain, but the ALJ did not suggest on this basis that her pain was not as severe as she reported, but rather that she did not need to lie down frequently or elevate her legs during the workday.  [Pl.'s Mem. at 10.]  Accordingly, the ALJ's reasoning in dismissing an RFC limitation that Plaintiff needs to elevate her legs to reduce swelling was sufficient.

Fourth, Plaintiff turns to specific statements she made about her conditions that the ALJ did not address:  (1) that her pain woke her up at night and deprived her of sleep, so she napped during the day, (2) that she had fallen because of her knee issues, and (3) that her knees would lock up when she was sitting and she would need assistance getting up from a chair.  [Pl.'s Mem. at 11 (citing R. 127, 129).]  But, the ALJ need not discuss every allegation specifically, as long

as he gave sufficient, articulable reasons for finding Plaintiff's alleged symptoms not entirely consistent with the record—which the Court concludes that he did in this case. *See Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2020); *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012).

Fifth, in the same paragraph in her brief, Plaintiff criticizes the ALJ's remaining reasoning used in evaluating whether the medical evidence supported Plaintiff's subjective reports. [Pl.'s Mem. at 11-12.] Plaintiff questions why the ALJ mentioned the strength in her upper extremities when she only alleged disability based on limitations in her lower extremities. [*See* R. 26.] But the ALJ was required to craft an RFC that included how much Plaintiff could lift and carry, *see* 20 C.F.R. § 404.1545(b), and thus reasonably assessed this evidence. Plaintiff also faults the ALJ for relying on her improvement immediately after surgery because the ALJ failed to recognize in that paragraph that that improvement was later tempered, as she reported that some arthritic pain in her knees had returned. [Pl.'s Mem. at 11; *see* R. 536, 545, 570, 573.] The ALJ did acknowledge Plaintiff's later reports of returned pain earlier in the decision, however. [R. 25-26.] Further, Plaintiff says the ALJ contradictorily characterized her physical examinations as "unremarkable" while also noting reports of weakness and tenderness in her knees, findings that, she asserts, are indeed "remarkable." [Pl.'s Mem. at 11.] Plaintiff's attempts to paint the ALJ as not carefully considering this evidence are unpersuasive. The ALJ acknowledged the objective medical evidence that both cut in favor of and against Plaintiff's allegations of continued pain and limited activity; he ultimately concluded that the medical evidence did not support the full extent of Plaintiff's claimed limitations, [R. 26], which was a proper ground upon which to not fully credit Plaintiff's subjective symptom statements, *see* 20 C.F.R. § 404.1529(c)(1).

Last, Plaintiff maintains that the ALJ's recognition of comments in the record about losing weight and returning to normal activity erroneously assumes that Plaintiff could perform anything approaching full-time work or engage in physical activity. [Pl.'s Mem. at 11-12.] Although Plaintiff faults the ALJ for not citing specific records, the ALJ thoroughly reviewed the medical evidence earlier in his decision and did not need to rehash it again—there, he pointed out that she had been recommended to lose weight in a 2018 record and, after surgery, to continue with exercise and activity as tolerated. [R. 24-25.] In any event, the Court finds that the ALJ's conclusion that these doctors' notes were inconsistent with a finding that Plaintiff is "unable to be physically active during the day" was reasonably supported by the record. Far from concluding that Plaintiff could work or engage in substantial physical activity, the ALJ was simply recognizing that the doctors obviously thought she could sustain some level of exercise and activity, which was partially inconsistent with her subjective claims.

Overall, none of Plaintiff's criticisms of the ALJ's reasons for concluding that her subjective symptom statements were "not entirely consistent" with the record convince the Court that the ALJ's conclusion met the bar of being "patently wrong." [R. 26.] *Summers*, 864 F.3d at 528.

### C. Treating Doctor's Opinion

Because Plaintiff's claim was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight," to any medical opinion. Instead, the ALJ considers a variety of factors in assessing medical opinions, including the supportability and consistency of the opinion, the source's relationship with the claimant, and the source's specialization. 20 C.F.R. § 404.1520c(a), (c). The "most important factors"—

which are the only ones that the ALJ is required to discuss in his decision—are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff takes issue with the ALJ's reasoning in concluding that the opinion of her treating physician, Dr. James Flynn, in December 2019—that she could not work more than 5 hours a week, or 20 hours a month[4]—was "not persuasive." [Pl.'s Mem. at 13-14; Pl.'s Reply at 7-9.] But the ALJ's analysis of Dr. Flynn's opinions was sound. First, earlier in the ALJ's decision, the ALJ determined that Dr. Flynn's first opinion in June 2019 that Plaintiff could lift, push, and pull up to 25 pounds and must be primarily seated during work, with brief periods of standing, was persuasive because it was consistent with the record evidence. [R. 25 (citing R. 574).] In particular, the ALJ concluded that the opinion aligned with the treatment records reporting an improvement in Plaintiff's symptoms following her knee surgeries and showing that, over the long term, Plaintiff had been able to walk unassisted with a mild limp, she was not limited in the use of her upper extremities, and she had some tenderness and weakness in her lower extremities. [R. 25; *see* R. 428-29, 434-35, 451, 468-69 (pre-surgery notes); R. 570, 573-75, 589, 594, 598 (post-surgery notes).] The ALJ thus incorporated Dr. Flynn's June 2019 opinion into the RFC by limiting Plaintiff to performing only sedentary work and standing or walking for no more than 10 minutes at a time, as well as mandating that after sitting for 45 minutes, she needs the opportunity to stand at a workstation for 2 minutes. [R. 25, 28.]

As the ALJ pointed out, the challenged opinion, issued 6 months later in December, differed in just one respect from the June 2019 opinion—it limited Plaintiff to working no more than 5 hours a week. [R. 27 (citing R. 584).] The ALJ then concluded that this aspect of

---

[4] Plaintiff misstates this restriction in her brief as "twenty hours per week." [Pl.'s Mem. at 13; *see* R. 584.]

Dr. Flynn's opinion was not persuasive because it was not supported by or consistent with the record. [R. 27.] First, as to supportability, the ALJ noted that Dr. Flynn gave "no explanation" for this new, more significant restriction that came only six months later. [*Id.*] Plaintiff provides her own explanation for the addition, arguing that Dr. Flynn most likely had a better understanding of Plaintiff's post-surgery function in December than June since it had been a longer time since the surgery and that more injections to her knees between the opinions "were not noted to result in any major improvement to her condition." [Pl.'s Mem. at 13.] But Plaintiff's speculation is irrelevant to supportability, however, because Dr. Flynn himself did not present objective medical evidence or give any explanation for this restriction to support his medical opinion. Under the regulations, the ALJ permissibly discounted Dr. Flynn's opinion on this basis. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations ***presented by a medical source*** are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.") (emphasis added); *see also Josefina T. v. Kijakazi*, No. 20 C 6223, 2022 WL 2669523, at *3 (N.D. Ill. Jul. 11, 2022) (ALJ properly discounted doctors' opinions that did not refer to the record to support them).

Additionally, Plaintiff argues without support or citation that the ALJ could have simply recontacted Dr. Flynn if he wanted an explanation for the new restriction. [Pl.'s Mem. at 13.] Perhaps, but the ALJ was not *required* to do so. Unless the record was insufficient to determine whether Plaintiff was disabled, the ALJ did not need to recontact any doctors. *See* 20 C.F.R. § 404.1520b(b) (when evidence is incomplete or inconsistent such that the ALJ is unable to render a decision, he may recontact a medical source); *Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018) (rejecting argument that ALJ needed to recontact source because "the record

contained adequate information for the ALJ to render a decision"). Here, the ALJ had all of the

medical treatment records concerning Plaintiff's knee conditions, an earlier opinion from

Dr. Flynn, and the state agency physicians' assessments. Thus, the ALJ did not need to seek out

clarification of Dr. Flynn's unexplained and undeveloped limitation of Plaintiff to 5 hours of

work per week where the ALJ could determine from the other available evidence whether

Plaintiff could perform full-time work (40 hours) per week.

Next, as to consistency, the ALJ concluded that the record evidence did not support that

Plaintiff's condition had worsened between June and December 2019, as she still was able to

walk unassisted with a mildly antalgic gait and had only some tenderness and loss of range of

motion in her lower extremities. [R. 27; *see* R. 573-75, 589, 594, 598.] Thus, the ALJ

concluded, Dr. Flynn's December 2019 assessment was inconsistent with the record and his own

earlier, less restrictive opinion. [R. 27.] Although Plaintiff faults the ALJ for relying on reports

of her gait being mostly normal, as she asserts that her issues with walking and standing have

been "pain related, not mechanical in nature," the ALJ properly considered the objective medical

evidence here regarding what Plaintiff could do despite her pain and in determining whether

Plaintiff's condition had gotten worse. [Pl.'s Mem. at 13.] Because Dr. Flynn's opinion that

Plaintiff could not work more than 5 hours a week did not align with the medical evidence or his

own June 2019 opinion, the ALJ properly rejected it, while accepting the bulk of Dr. Flynn's

opinion that Plaintiff is limited to lifting, pushing, and pulling up to 25 pounds and must be

primarily seated during work, with brief periods of standing, and incorporating those limitations

into the RFC. [R. 25, 27.]

* * * * *

Ultimately, the ALJ's decision to limit Plaintiff to sedentary work—involving mostly seated work with no more than 2 hours of standing and/or walking per an 8-hour day—with additional postural and environmental limitations, including the ability to stand for 2 minutes after 45 minutes of sitting, was supported by substantial evidence. [R. 23.] *See Elder*, 529 F.3d at 413. Plaintiff's knee conditions undoubtedly affected her ability to work, and the ALJ adequately explained and supported his conclusions about just how much Plaintiff could do by considering the record evidence, Plaintiff's subjective symptoms, and the medical opinions. [R. 23-28.]

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 16] is denied, and the Commissioner's motion for summary judgment [dkt. 22] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 9/6/2022

_____
BETH W. JANTZ
United States Magistrate Judge